IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  CRIMINAL ACTION NO. 2:22-cr-00137

TERRY DWAYNE JONES,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Motion to Suppress* (Document 21) and the *Response of the United States of America to Defendant's Motion to Suppress* (Document 25). During a suppression hearing held on March 16, 2023, the Court heard testimony from Deputy Michael Turley of the Jackson County Sheriff's Office. The Court issued an oral ruling denying the motion to suppress, to be followed by this written order.

**CONFRONTATION CLAUSE**

During the suppression hearing, the Defendant objected to the witness wearing a mask, citing the Confrontation Clause of the Sixth Amendment. The Court permitted those in the courtroom to wear or remove masks at their discretion based on the CDC's report that community levels of COVID-19 are currently low in Kanawha County, West Virginia. The Confrontation Clause contained in the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." It "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). "We have never held, however, that

the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (emphasis in original). "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850. Like other Sixth Amendment rights, the Confrontation Clause must "be interpreted in the context of the necessities of trial and the adversary process." *Id.* The "central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact," accomplished through "physical presence, oath, cross-examination, and observation of demeanor by the trier of fact." *Id.* at 845–46.

The Court is unconvinced that a mask covering a witness's nose and mouth implicates the Confrontation Clause. The witness appeared in person, under oath, subject to cross examination, with the ability for the Court, acting as fact-finder for purposes of the suppression hearing, the Defendant, and observers to evaluate his demeanor. Despite being unable to see his nose and mouth, everyone present remained able to assess tone, unusual pauses, shifting or squirming, eye contact, and body language. The less tangible benefits of face-to-face confrontation, including the idea that a person is less likely to lie while testifying in person, in the presence of a defendant, and the symbolic benefit of requiring testimony in the presence of the accused, are likewise not implicated by the wearing of masks. *See id.* at 846–47 (discussing purposes of confrontation). To the extent that a mask covering a witness's nose and mouth can be said to infringe on the Defendant's Confrontation Clause right to see a witness's full facial expression, the Court finds

2

that permitting witnesses to wear masks during a pandemic is necessary to further the important state interest of protecting vulnerable people from contagious illnesses.[1]

## FACTUAL BACKGROUND

In an *Indictment* (Document 1) returned on July 12, 2022, the Defendant, Terry Dwayne Jones, is charged with possession with intent to distribute 40 grams or more of a substance containing a detectable amount of fentanyl. Deputy Turley pulled Mr. Jones over on February 15, 2022, and discovered the alleged controlled substance during a warrantless search of his vehicle. The Defendant challenges the basis of the traffic stop.

Deputy Turley testified that he was parked along I-77 around mile marker 144, not far from Ripley, West Virginia, during the afternoon of February 15, 2022. He observed a white car that he believed was exceeding the speed limit based on his visual observation. Deputy Turley pulled out to match the speed. He does not recall how long it took him to catch up to the car or precisely how long he followed it to match the speed, though he testified that he typically would pace a car for 1/8 to 1/4 mile. He matched the speed at 75 miles per hour, based on the speedometer in his cruiser. The speed limit is 70 miles per hour. He pulled the car over at the 138-mile marker.[2] Deputy Turley explained that this location is an ideal place to stop a vehicle because there is a long straight stretch that ensures visibility, and it is close to the Ripley exit so backup can arrive quickly if needed.

---

1 In addition, the proceeding at issue was a suppression hearing, wherein the Court was the sole finder of fact. Indeed, the Defendant did not contest the accuracy of Deputy Turley's testimony, but instead argued that the facts described were legally insufficient to establish probable cause.
2 The Court noted orally that Deputy Turley had followed the vehicle for five miles. Deputy Turley did not recall precisely how long he followed directly behind Mr. Jones' vehicle, though he pulled the vehicle over approximately six miles from the point where he first observed the car.

Deputy Turley testified that he smelled marijuana as he approached. He spoke with Mr. Jones, who was driving the vehicle, and a female passenger. He returned to his vehicle with their identification, then asked them to exit the vehicle so that he could perform a search. He found marijuana, Ecstasy, and fentanyl pills in the vehicle. Although he had a canine partner in his car, he did not remove it because the odor of marijuana was sufficient to justify the search. He did not turn on his body camera and testified that he was unaware that department policy required use of body cams during traffic stops. In a recorded, Mirandized interview after his arrest, Mr. Jones admitted that he had the cruise control set at around 74 mph, above the posted speed limit, that the car smelled of marijuana, and that the drugs found in the vehicle were his.

Deputy Turley testified that he typically either responded to calls or did traffic patrol along I-77 during his shifts. He began working for the Jackson County Sheriff's Office in 2020, and began working as a police officer in 2018, attending the police academy in 2019. He did not receive training on pacing but did describe his method. He would "match their speed with my cruiser." (Turley Tr. at 7:5.)[3] More specifically, he would "travel the same speed as they are. They're not gaining from you. You're not losing from them. And you travel long enough to determine that you are not going varying speeds," then check the speedometer to determine the speed of both vehicles. (Tr. at 8::1-3.) Deputy Turley did not recall the specifics of any training related to traffic enforcement. He also did not recall traffic or weather conditions on the date of Mr. Jones' stop. He testified that he was unaware of factors, such as speed or tire inflation or wear, that could impact the accuracy of pacing. He had a new police cruiser that was delivered in September or October of 2021 with a certified speedometer. He searched online prior to the

---

3 The Court has utilized a rough transcript of the hearing. Precise citations may differ slightly from the final version.

hearing to learn that being certified meant it was accurate within two miles per hour. The Jackson County Sheriff's Office does not use radar guns, and it does not calibrate the speedometers.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures. U.S. Const. amend. IV. Brief detention pursuant to a traffic stop constitutes a "seizure" for purposes of the Fourth Amendment and must therefore be "reasonable." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "[T]he actual motivations of the individual officers involved" and their "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813 (finding pretextual stops permissible). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop," including checking

5

ID, licenses, registration, and running a computer check. *United States v. Branch*, 537 F.3d 328, 335–36 (4th Cir. 2008).

The Fourth Circuit has addressed stops for speeding, explaining that the "inquiry here is whether, given the totality of the circumstances, [the officer] had reasonably trustworthy information sufficient to support a prudent person's belief that [the defendant] was speeding." *United States v. Sowards*, 690 F.3d 583, 587–88 (4th Cir. 2012). The Fourth Circuit found that the stop in *Sowards* was not supported by probable cause where the officer stopped a vehicle based only on his visual estimate that the vehicle was going 75 mph where the speed limit was 70 mph, and the officer's testimony revealed significant difficulty with measurements, as well as a lack of training or articulable technique for estimating speed. *Id.* at 593–94. The court explained that a visual estimate might be sufficient if the "vehicle's speed is estimated to be in significant excess…of the legal speed limit." *Id.* at 591. However, if the differential between the vehicle speed and the speed limit is slight "additional indicia of reliability are necessary to support the reasonableness of the officer's visual estimate." *Id.* "The reasonableness of an officer's visual estimate that a vehicle is traveling in slight excess of the legal speed limit may be supported by radar, pacing methods, or other indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate." *Id.* at 592.

The Defendant relies on a recent opinion in which Judge Goodwin found that "[w]ithout further indicia of reliability, such as information on Detective Seth Johnson's training in visual estimates of speed, I cannot find that his estimate of 37 miles per hour in a 30 mile per hour zone based on pacing alone supports a finding of reasonable suspicion justifying a traffic stop." *United States v. Morris*, No. 2:20-CR-00167, 2021 WL 141799, at *4 (S.D.W. Va. Jan. 14, 2021). In

*Morris*, Judge Goodwin found that expired registration tags provided an independent basis justifying the stop and ultimately denied the motion to suppress without a hearing. *Id*. Here, because speeding was Deputy Turley's sole basis for stopping the Defendant's vehicle, the Court held a hearing to determine whether sufficient indicia of reliability exist to support the reasonableness of the officer's determination that the Defendant was speeding.

The speed differential is slight in this case, raising the bar for the type of confirmatory evidence necessary to establish probable cause. Deputy Turley confirmed his visual impression that the Defendant was speeding through pacing, a method explicitly condoned in *Sowards*. He explained his method of matching his cruiser's speed to the speed of a vehicle: he would follow the vehicle, ensuring that he was not gaining or losing on it, over a distance of at least 1/8 mile, and check his speedometer. Although he had no specific training, the method is straightforward. The Jackson County Sheriff's Office does not use radar guns or calibrate the speedometers in cruisers. However, Deputy Turley's cruiser was only about four months old and was equipped with a certified speedometer from the factory. It had both digital and analog speedometers. While not relevant to the question of whether probable cause existed at the time of the stop, Mr. Jones' later statement that he had his cruise control set at about 74 mph further verifies that Deputy Turley's method and equipment were sufficient to accurately determine a vehicle's speed. Thus, the Court finds that Deputy Turley had reasonably trustworthy information sufficient to believe that Mr. Jones was speeding. The stop was supported by probable cause. Therefore, the Defendant's motion to suppress must be denied.

7

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion to Suppress* (Document 21) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: March 20, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA